UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF GEORGIA

SAVANNAH DIVISION

| | |
|---|---|
| DIRECTV, LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. CV413-110 |
| | ) |
| HERMAN R. SHIRAH, JR. a/k/a | ) |
| RUDY SHIRAH, Individually, and as | ) |
| Officer, Director, Shareholder, and/or | ) |
| Principal of PANACEA OF THE | ) |
| ISLANDS, INC., d/b/a/ THE | ) |
| ISLANDER; and PANACEA OF | ) |
| THE ISLANDS, INC., d/b/a THE | ) |
| ISLANDER, | ) |
| | ) |
| Defendant, | ) |

## ORDER

Plaintiff DirecTV, LLC ("DirecTV") claims that defendants violated the Cable Communications Policy Act of 1984, 42 U.S.C. § 521, *et seq.*, by using a residential DirecTV subscription for commercial benefit in The Islander restaurant in Savannah, Georgia. (Doc. 1 at 4-5.) DirecTV suggests that defendant Shirah installed or moved equipment to the business to take advantage of the lower cost residential subscription,

which did not include valid commercial exhibition rights. (*Id.* at 4.) Presently before the Court are defendants' motions to compel (doc. 31) and for a protective order (doc. 33).

After reading the briefs and attached exhibits, there is some support for plaintiff's contention that defendants are engaged in inappropriate gamesmanship and now seek to enlist the Court's aid in that regard. For instance, in their first interrogatory to plaintiff, defendants ask for the "names, address and telephone number of every person involved in the installation process . . . of any equipment that allegedly provides Directv, LLC satellite services to [the restaurant], . . . [including] [t]he date of the installation of the equipment provided by Directv, LLC on the commercial premises." (Doc. 31-12 at 1-2.) In response to the question, DirecTV states a number of boilerplate objections (which are universally disfavored) and then notes that it "is unable to locate a properly authorized commercial account located at the commercial premises." (Doc. 31-12 at 3-4.) In a follow-up response, DirecTV notes that it only disconnected equipment that came from a "residential account in the name of Rudy Shirah located at" at his home address. (*Id.* at 4.) Presumably, then, Shirah's residential equipment

was used in the restaurant, but as best the Court can tell, DirecTV has never directly alleged as much given defendants' refusal to hand over the restaurant's DirecTV unit identification number on grounds that the request for that information is "vague."[1] They have also refused to hand over any billing statements or satellite service installation records. (*Id.* at 3; doc. 33 at 11.) Without some way to identify the equipment used in the restaurant, how can DirecTV be expected to provide any information as to the equipment's history?

Defendants have also stonewalled in response to many of plaintiff's other interrogatories. For instance, they have refused to hand over any satellite service bills or identify employees who were working at the restaurant on the date that DirecTV learned of an offending broadcast.[2] (Doc. 33-8 at 4.) They have also refused to name the owner of the restaurant's liquor license, which would tend to show who should be held

---

[1] While the discovery request was not perfectly worded, defendants' response appears to be sheer obstructionism. A quick Google search explains that to find the DirecTV ID number, one simply needs to locate a 12-digit number on the satellite receiver that is usually placed on a sticker inside the access card slot. *See* How to Find a Receiver's RID Number, http://www.ehow.com/how_8609060_receivers-rid-number.html (last visited Nov. 1, 2013).

[2] Defendants insist in their motion for a protective order that the interrogatory is vague because it is unclear which defendant it refers to. (Doc. 33 at 8.) This is laughable. Each list of interrogatories was directed to a single defendant, as the exhibits attached to defendants' own brief demonstrate. (Doc. 38-5 at 4 ("INTERROGATORIES TO DEFENDANT PANACEA OF THE ISLANDS, INC.").)

3

responsible for the alleged infringement (doc. 33 at 5), and they have refused to hand over any information that would suggest the amount of income the restaurant takes in, which would be relevant to damages. (*See* doc. 33 generally.) In what is perhaps the most outrageous of defendants' evasions, when asked to admit that "Shirah had the capability of receiving DirecTV satellite programming on the date of September 27, 2012," defendants respond that "[n]o human being is capable of receiving satellite programming." (Doc. 33-9 at 4.)

All of this is beside the point, however, since the parties have not made a good faith effort to resolve these disputes before seeking judicial intervention. Under Local Rule 26.4 and Fed. R. Civ. P. 37(a)(2), parties seeking a protective order or to compel discovery *must* certify that a good faith effort has been made to resolve the dispute before coming to court. That rule is enforced. *Scruggs v. Int'l Paper Co.*, 2012 WL 1899405 at * 2 (S.D. Ga. May 24, 2012). Here, there is a certification, and defendants' letters to plaintiff's counsel lead with a formal recitation that they amount to "an attempt in good faith to resolve" the discovery disputes. In the end, however, they simply recount the perceived errors in plaintiff's requests and responses and then demand the production of

satisfactory responses within seven days. (Docs. 31-14, 33-9.) Despite the certification, such a one-sided demand does not meet the good-faith-effort standard. Plaintiff's suggestion that they take their dispute to the Court also fails to satisfy the obligation to confer. *See Compass Bank v. Shamgochian*, 287 F.R.D. 397, 399-400 (S.D. Tex. 2012) (collecting cases).[3]

Defendants' motions to compel and for a protective order (docs. 31 and 33) are **DENIED**, and the parties are **ORDERED** to confer, face to face or by telephone, and make a good faith effort to work out these disputes without further Court involvement within the next 14 days. Should they be unable to do so, the Court will be inclined to impose

---

[3] *See also Limtiaco v. Auction Cars.Com, LLC*, 2012 WL 5179708 at *3 (D. Nev. Oct. 17, 2012) (several letters identifying the perceived failings of the defendant's discovery responses did not constitute the necessary effort required by Rule 37); *Velazquez–Perez v. Developers Diversified Realty Corp.*, 272 F.R.D. 310, 312 (D.P.R. 2011) (emails and letters sent to defendant did not reveal that a good faith effort was made); *Robinson v. Napolitano*, 2009 WL 1586959, at *3 (D.S.D. June 4, 2009) (government's letter to the plaintiff, outlining why his discovery responses were deficient, did not satisfy the meet-and-confer requirement); *Williams v. Board of County Com'rs of Unified Gov't of Wyandotte County and Kansas City, Kan.*, 192 F.R.D. 698, 699 (D. Kan. 2000) ("sending unanswered correspondence to opposing counsel demanding discovery be produced by a specific deadline" does not satisfy the duty to confer); *Cotracom Commodity Trading Co. v. Seaboard Corp.*, 189 F.R.D. 456, 459 (D. Kan. 1999) (deciding that "parties do not satisfy the conference requirements simply by requesting or demanding compliance with the requests for discovery" by an arbitrary deadline, because the parties need to "deliberate, confer, converse, [and] compare views"); *Shuffle Master, Inc. v. Progressive Games, Inc.*, 170 F.R.D. at 172 (D. Nev. 1996) ("[t]elecopied demand letters to opposing counsel demonstrate" both a lack of good faith and a lack of conferment).

sanctions against the offending parties *and* their counsel. And it should go without saying that if the same sort of objections illuminated above are re-raised, sanctions *will* be deployed.

**SO ORDERED** this  6th  day of November, 2013.

*/s/ G.R. Smith*
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA