FILED
U.S. DISTRICT COURT
SAVANNAH DIV.
2014 SEP 22 PM 3:06
CLERK B. West
SO. DIST. OF GA.

IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

DIRECTV, LLC,

    Plaintiff,

v.

    CASE NO. CV413-110

HERMAN R. SHIRAH, JR., a/k/a
Rudy Shirah, individually,
and as an officer, director,
shareholder and/or principal
of Panacea of the Islands,
Inc., d/b/a The Islander; and
PANACEA OF THE ISLANDS, INC.,
d/b/a The Islander,

    Defendants.

## O R D E R

Before the Court is Defendants' Motion for Summary Judgment. (Doc. 43.) Plaintiff has filed a response in opposition (Doc. 49), to which Defendants have filed a reply (Doc. 53). For the reasons that follow, Defendants' Motion for Summary Judgment is **DENIED**.

### BACKGROUND

Plaintiff provides interstate broadcast satellite programming services on a subscription basis to both residential and commercial customers.[1] (Doc. 1 at 2.) On

---

[1] For the purposes of this motion for summary judgment, the Court construes the facts in the light most favorable to the nonmoving party. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 577-78 (1986). Because

or about September 27, 2012, Plaintiff's agent discovered that Defendants were exhibiting Plaintiff's programming at their commercial establishment—The Islander—located at 221 Johnny Mercer Blvd., Savannah, Georgia. (Doc. 49 at 3.) Defendants' admit that their establishment was open to the public for business on the day in question. (Doc. 43 at 5-6.) The programming was being delivered to the establishment pursuant to an account established in 2002 by Defendants' former agent, Gale Woodard. (Doc. 49 at 3.)

While Defendants claim that Ms. Woodard opened a "commercial account" for the service, Plaintiff's account records indicate that the account was residential in nature. (Doc. 49, Attach. 1 ¶ 2.) Plaintiff's records and billing system also list the account as registered to Defendant Shirah individually at his home address. (Doc. 49 at 6.) Plaintiff's records further indicate that it shipped the equipment customers use to receive its programming to Defendant Shirah at this same address. (Doc. 49, Attach. 1 ¶ 8.) The actual installation of equipment was carried out by third-party retailer Circuit

---

the Court only addresses Defendants' motion, all facts are construed in the light most favorable to Plaintiff.

City, although no documentation has been presented as to where installation took place.² (Doc. 49 at 4.)

Neither party has presented a signed written contract governing Defendants' account. Rather, Plaintiff states that its business practice is to send its subscribers "customer agreements" on a yearly basis that outline the terms of the parties' agreements. (Doc. 49 at 5.) By accepting Plaintiff's services, subscribers are deemed to accept the terms contained within these customer agreements. (Id.) The customer agreement governing Defendants' account describes it as residential and states that Defendants may not exhibit the programming "in areas open to the public or in commercial establishments." (Doc. 49, Ex. C ¶ 1(i).) Defendants dispute ever receiving the customer agreement. (Doc. 53 at 10.)

Plaintiff discontinued service to Defendants on November 13, 2012, following its discovery of Defendants' public display of its programming in their commercial establishment. (Id. at 5.) On April 30, 2013, Plaintiff filed this action alleging conversion, violations of the Federal Communications Act ("FCA") and the Electronic

---

² On January 15, 2009, Circuit City Stores, Inc. announced its liquidation in bankruptcy, ceasing operations entirely on March 8, 2009. History of Circuit City, http://http://www.nydailynews.com/news/money/history-circuit-city-article-1.368853 (last visited Sep. 2, 2014).

3

Communications Privacy Act ("ECPA"), and seeking punitive damages and injunctive relief. (Doc. 1.) On November 13, 2013, Defendants moved for summary judgment arguing that Plaintiff is unable to show a material issue of fact with regard to their potential liability because Plaintiff cannot prove the account was for residential service only. (Doc. 43) Prior to addressing Defendants' motion, this Court dismissed count three of Plaintiff's complaint alleging civil conversion, finding that Plaintiff had failed to state a claim upon which relief could be granted. (Doc. 61.) Accordingly, only Plaintiff's claims based on violations of the FCA and ECPA are at issue for purposes of Defendants' motion for summary judgment.

**ANALYSIS**

I. <u>STANDARD OF REVIEW</u>

According to Federal Rule of Civil Procedure 56(a), "[a] party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought." Such a motion must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." <u>Id.</u> The "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need

for trial.' " Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56 advisory committee notes).

Summary judgment is appropriate when the nonmovant "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The substantive law governing the action determines whether an element is essential. DeLong Equip. Co. v. Wash. Mills Abrasive Co., 887 F.2d 1499, 1505 (11th Cir. 1989).

> As the Supreme Court explained:
>
> [A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.

Celotex, 477 U.S. at 323. The burden then shifts to the nonmovant to establish, by going beyond the pleadings, that there is a genuine issue as to facts that are material to the nonmovant's case. Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991).

The Court must review the evidence and all reasonable factual inferences arising from it in the light most favorable to the nonmovant. Matsushita, 475 U.S. at 587-88. However, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Id. at 586. A mere "scintilla" of evidence, or simply conclusory allegations, will not suffice. See, e.g., Tidwell v. Carter Prods., 135 F.3d 1422, 1425 (11th Cir. 1998). Nevertheless, where a reasonable fact finder may "draw more than one inference from the facts, and that inference creates a genuine issue of material fact, then the Court should refuse to grant summary judgment." Barfield v. Brierton, 883 F.2d 923, 933 (11th Cir. 1989).

II. DEFENDANTS' ACCOUNT STATUS AND POTENTIAL LIABILITY

While Defendants admit to displaying the programming in their restaurant, they argue that Plaintiff has not produced sufficient evidence to establish that they held a residential account as opposed to a commercial account.[3]

---

[3] While it is not entirely clear, Defendants also at times appear to argue that no contract exists at all between the parties. While Defendants first claim that their agent Ms. Woodard opened a commercial account with Plaintiff (Doc. 43 at 3), they later state that Plaintiff has failed to show that Defendants consented to an account of any type (Doc. 53 at 2). However, Defendants admit to having paid for and received satellite service for over ten years. (Id. at 1.)

6

Specifically, Defendants contend that Plaintiff's inability to produce signed documentation establishing Defendants' acceptance of a residential account should prove fatal to its claims. (Doc. 43 at 4.) According to Defendants, this lack of evidence precludes any liability they may have to Plaintiff. (Id. at 1.)

However, the Court finds Defendants' argument without merit. Under Georgia law, a party's conduct may bind him to the terms of a contract, even if he does not sign the agreement. See Comvest, L.L.C. v. Corp. Secs. Grp. Inc., 234 Ga. App. 277, 280, 507 S.E.2d 21, 24-25 (1998). Here, Defendants admit to using and paying for satellite service for ten years. (Doc. 43 at 5.) Accordingly, the fact that Plaintiff has not put forward a signed contract for residential service is not necessarily determinative in this case. Rather, the Court will review all the evidence put forward by Plaintiff to determine whether there exists a genuine issue of material fact regarding Defendants' account status.

Because Defendants admit to displaying the programming, the only question before the Court is whether

---

Accordingly, the Court finds the question—to the extent that there is one—of whether any contract exists not an issue that may be resolved at summary judgment.

they were not authorized to do so.[4] In support of their position that Defendants were authorized only to exhibit the programming in a residential setting, Plaintiff points to its internal records indicating the account as residential, previous bills that illustrate Defendants were charged only the residential rate, and copies of its customer agreements that state the account is for residential purposes only. Defendants produce a myriad of arguments attempting to portray the evidence as either invalid or otherwise. For the following reasons, however, the Court finds Defendants' arguments unpersuasive.

---

[4] As stated earlier, Plaintiff has alleged violations of both the FCA, 47 U.S.C. § 605(a) and the ECPA, 18 U.S.C. § 2511(1)(a). Defendants have not identified specifically against which claims it seeks summary judgment. The Eleventh Circuit has held that a defendant violates § 605(a) when it pays only the residential fee for satellite programming yet displays it in a commercial establishment. J & J Sports Prods., Inc. v. Taqueria Jalisco, Inc., 491 Fed. App'x 962, 962 (11th Cir. 2012). Such is the case regardless of a defendant's willfulness or good faith. Kingvision Pay Per View, Ltd. V. Williams, 1 F. Supp. 2d 1481, 1484 (S.D. Ga. 1998). It is less clear, however, whether such a display would qualify as an "interception" for purposes of § 2511 should Defendants prove that the alleged wrongful commercial display was unintentional. See, e.g., DirecTV, LLC v. Perugini, 2014 WL 2812123 at *5 (M.D. Penn. June 20, 2014) (unpublished) (inadvertent use of residential signal for commercial purposes insufficient to maintain civil action under § 2511). Because Defendant brings no argument on this matter, however, the Court need not address this issue at the present time.

8

Defendants first argue that the Court should discount Plaintiff's internal records because they are maintained on a computer and thus "can be altered at any time by [Plaintiff], which has sole possession and control over this data." (Doc. 43 at 10.) Defendants do not contend, however, that the data was actually altered in any way, but rather that the possibility it could be altered illustrates a lack of trustworthiness. (Doc. 53 at 9.) The Court finds this a bizarre argument, and Defendants have unsurprisingly failed to offer any legal support for their theory. Much of the discovery process, upon which our legal system relies, would be a futile waste of time if courts were to dismiss as untrustworthy all evidence initially held in another party's sole possession. Absent some evidence that the records actually have been fraudulently altered, the Court can discern no reason to disregard their potential probative value. Any determination as to the credibility of the evidence, and the weight it should be given, is ultimately left for the jury. See United States v. Billue, 994 F.2d 1562, 1565 (11th Cir. 1993).

Defendants' billing statements from Plaintiff also describe the account as residential and Defendants were charged the residential rate for the duration of their

service. (Doc. 49 at 8.) However, Defendants dismiss this billing notation as a mistake on Plaintiff's part. (Doc. 53 at 9.) However, there is no evidence before the Court that the description actually was in error, and Plaintiff maintains the statement is accurate. For the same reasons that the Court will not disregard Plaintiff's internal records, it will also not discount the billing statements as evidence that Defendants' account was residential. Defendants' mere belief that the billing statements are mistaken is insufficient to grant summary judgment.

Defendants next argue that Plaintiff has failed to show that Defendants ever received or observed the customer agreements whose terms describe the account as residential. (Doc. 53 at 7-8.) Plaintiff, however, argues that it has continually sent Defendants new copies of the customer agreement each year for ten years, as well as provided the terms clearly on its website. (Doc. 49 at 3.) In response to Plaintiff's statement that it mailed these customer agreements to Defendants, Defendants simply state that they never received or observed them. (Doc. 53 at 10.) Such a statement, however, is insufficient to prevail at summary judgment. See Barnett v. Okeechobee Hosp., 283 F.3d 1232, 1239 (11th Cir. 2002) ("[T]he common law has long recognized a rebuttable presumption that an item properly

mailed was received by the addressee."). Accordingly, when viewing the evidence in the light most favorable to Plaintiff, the Court cannot conclude as a matter of law that Defendants did not agree to the terms in question.

Defendants have offered no compelling argument why the Court should not consider any of the evidence produced by Plaintiff. Further, the Court does not find that the evidence presented amounts to a mere "scintilla" as Defendants describe it. (Doc. 43 at 13.) To the contrary, the Court finds the evidence creates a genuine question of material fact with regard to Defendants' account status and consequent potential liability. Accordingly, Defendants' motion must be denied.

## CONCLUSION

For the foregoing reasons, Defendants' Motion for Summary Judgment (Doc. 43) is **DENIED**. Plaintiff's claims may proceed to trial.

SO ORDERED this 22ND day of September 2014.

WILLIAM T. MOORE, JR.
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA

11