IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

DIRECTV, LLC, )
)
    Plaintiff, )
)
v. ) CASE NO. CV413-110
)
HERMAN R. SHIRAH, JR., a/k/a )
Rudy Shirah, individually, )
and as an officer, director, )
shareholder and/or principal )
of Panacea of the Islands, )
Inc., d/b/a The Islander; and )
PANACEA OF THE ISLANDS, INC., )
d/b/a The Islander; )
)
    Defendants. )
)

## ORDER

Before the Court is Plaintiff's Motion for Summary Judgment. (Doc. 63.) Defendants have filed a response in opposition. (Doc. 71.) In addition, Defendants have filed a Motion to Strike[1] (Doc. 68) an affidavit offered in support of Plaintiff's Motion for Summary Judgment. Plaintiff has filed a response to the Motion to Strike (Doc. 70), to which Defendants have filed a reply (Doc. 73). For the reasons that follow, Defendants' Motion to Strike is **DENIED**. Plaintiff's Motion for Summary Judgment is **GRANTED**.

---

[1] Defendants have also filed a Motion to Amend (Doc.69) seeking to correct typos in their prior Motion to Strike. After careful consideration, Defendants' Motion to Amend is **GRANTED**.

The parties shall have **thirty days** from the date of this order to file briefs regarding the appropriate damages, costs and attorney's fees regarding Plaintiff's Federal Communications Act claim. Because Plaintiff's Electronic Communications Privacy Act claim was not addressed by Plaintiff's Motion for Summary Judgment, this case will proceed to trial on that claim.

**BACKGROUND**

Plaintiff provides interstate broadcast satellite programming services on a subscription basis to both residential and commercial customers.[2] (Doc. 1 at 2.) On or about September 27, 2012, Defendants were exhibiting Plaintiff's programming at their commercial establishment—The Islander—located at 221 Johnny Mercer Blvd., Savannah, Georgia. (Doc. 63, Attach. 10 at ¶¶ 2, 8.) Defendants admit that their establishment was open to the public for

---

[2] For the purposes of this motion for summary judgment, the Court construes the facts in the light most favorable to the nonmoving party. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 577-78 (1986). Because the Court only addresses Plaintiff's motion, all facts are construed in the light most favorable to Defendants. However, Defendants' statement of material facts fail to respond to each individual statement from Plaintiff's statement of material facts. Accordingly, the uncontested facts contained in Plaintiff's statement of material facts are deemed admitted. See S.D.L.R. 56.1 ("All material facts set forth in the statement [of material facts] required to be served by the moving party will be deemed to be admitted unless controverted by a statement served by the opposing party.").

2

business on the day in question. (Id. at ¶ 10.) The public display of Plaintiff's programming at the establishment was witnessed by Plaintiff's agent, Jeffrey Dail. (Id. at ¶¶ 11-12.) The programming was being delivered to the establishment pursuant to an account established in 2002 by Defendants' former agent, Gale Woodard. (Doc. 71 at 3.)

The initial sale of Plaintiff's programming service to Defendants and the installation of the equipment necessary to receive the programming was carried out by third-party retailer Circuit City. (Doc. 71 at 3-4.) However, neither party has produced any evidence documenting the specifics of that initial transaction.[3] (Doc. 71 at 4.) Defendants maintain that Ms. Woodard opened a "commercial account" for the programming service. (Doc. 71, Attach. 1 at 3.) However, Plaintiff states that no such commercial account exists. (Doc. 66 ¶ 13.) Rather, Plaintiff's records and billing system list a residential account registered to Defendant Shirah individually at his home address. (Id. ¶ 14.) Defendants state that the designation of the account

---

[3] On January 15, 2009, Circuit City Stores, Inc. announced its liquidation in bankruptcy, ceasing operations entirely on March 8, 2009. History of Circuit City, http://www.nydailynews.com/news/money/history-circuit-city-article-1.368853 (last visited Mar. 16, 2015). In addition, Defendants' agent Ms. Woodard has since passed away. (Doc. 71 at 5.)

3

as residential result of a clerical error by Plaintiff. (Doc. 71 at 5.)

Neither party has presented a signed written contract governing Defendants' account. Rather, Plaintiff states that by accepting Plaintiff's services, its subscribers are deemed to have accepted its terms of service. (Doc. 71 at 4.) The customer agreement Plaintiff argues pertains to Defendants' account describes it as residential and states that Defendants may not exhibit the programming "in areas open to the public or in commercial establishments." (Doc. 49, Ex. C ¶ 1(i).) Defendants dispute ever receiving the customer agreement. (Doc. 71 at 3.)

Plaintiff discontinued service to Defendants on November 13, 2012, following its discovery of Defendants' public display of its programming in their commercial establishment. (Doc. 66 at 10.) On April 30, 2013, Plaintiff filed this action alleging conversion, violations of the Federal Communications Act ("FCA") and the Electronic Communications Privacy Act ("ECPA"), and seeking punitive damages and injunctive relief. (Doc. 1.) Plaintiff's claim for civil conversion was dismissed by order of this Court on March 12, 2014. (Doc. 61.) On September 22, 2014, the Court denied Defendants' Motion for

4

Summary Judgment with regard to Plaintiff's FCA and ECPA claims. (Doc. 77.)

Plaintiff has now moved for summary judgment, arguing that no material issue of fact exists regarding Defendants' liability under the FCA. (Doc. 63.) Plaintiff has not moved for summary judgment with regard to its claim under the ECPA. In support of its motion, Plaintiff has filed an affidavit by its vice-president of Risk Management, Kent Mader. (Doc. 66.) Defendants have filed a response in opposition. (Doc. 71.) In addition, Defendants have filed a Motion to Strike Mr. Mader's affidavit (Doc. 68), to which Plaintiff has filed a response (Doc. 70). Finally, Defendants have also filed a reply in support of their Motion to Strike. (Doc. 73.)

**ANALYSIS**

I. <u>THE MOTION TO STRIKE</u>

As an initial matter, the Court addresses Defendants' Motion to Strike.[4] (Doc. 68.) In their motion, Defendants include a myriad of arguments why Mr. Mader's affidavit should not be considered by the Court, none of which have merit. The Court will not waste time dealing with each of

---

[4] Defendants have also filed an objection to the affidavit. (Doc. 67.) Defendants repeat their objections in their Motion to Strike. (Doc. 68, Attach. 1.) Accordingly, the Court's analysis applies equally to both filings.

5

Defendants' individual objections to the various paragraphs, but will instead respond generally to Defendants' concerns.

First, Defendants make the broad assertion that the affidavit should be struck entirely because it is not made upon personal knowledge of the affiant, fails to set out facts that would be admissible in evidence, and fails to demonstrate the affiant's competency to testify on the matters stated.[5] (Doc. 68 at 1.) However, it appears plainly evident that Mr. Mader's testimony is based on his personal knowledge of Plaintiff's business operations and his review of Plaintiff's internal account documents. In addition, the Court finds Mr. Mader is competent to testify concerning the content of these documents given Mr. Mader's position as the Plaintiff's vice-president of risk management. Lastly, the Court finds no reason to question the admissibility of the evidence underlying Mr. Mader's

---

[5] Defendants also argue that the documents attached to Mr. Mader's affidavit should be struck because they are not sworn, certified copies as required by Fed. R. Civ. P. 56(e). However, such a requirement is no longer necessary. See Fed. R. Civ. P. 56 advisory committee notes to subdivision (c) ("The requirement that a sworn or certified copy of a paper referred to in an affidavit or declaration be attached to the affidavit or declaration is omitted as unnecessary given the requirement in subdivision (c)(1)(A) that a statement or dispute of fact be supported by materials in the record."). The documents attached to the affidavit are part of the record in this case. Accordingly, this issue is moot.

affidavit. Defendants' arguments concerning hearsay, as discussed below, are without merit and have no impact on the admissibility of Mr. Mader's statements.

Next, Defendants object specifically to nine of the sixteen paragraphs for lack of relevancy. (Doc. 68, Attach. 1 at 2-4.) The paragraphs in question provide a general overview of Plaintiff's business and internal procedures. The Court agrees that Mr. Mader's statements are of little interest in this case, although they do appear to give some foundational context to Mr. Mader's more pertinent testimony concerning facts relevant to this action. In any case, the Court finds striking these statements, even if they are of minimal probative value, would be a waste of time. See, e.g., Kirk v. Met. Life. Ins. Co., 331 F. Supp. 1361, 1362 (M.D. Fla. 2003) ("Motions to strike on the grounds of insufficiency, immateriality, irrelevancy and redundancy are not favored, often being considered 'time wasters,' and will usually be denied unless the allegations have no possible relation to the controversy and may cause prejudice to one of the parties." (quoting Poston v. Am. President Lines, Ltd., 452 F. Supp. 568, 570 (S.D. Fla. 1978))). Due to their innocuous nature, the Court will not bother to strike these paragraphs for lack of relevancy.

7

Defendants also object to some statements by Mr. Mader on grounds that they contain inadmissible hearsay. (Doc. 68, Attach. 1 at 2-4.) Hearsay is a statement, other than one made by the declarant, offered in evidence to prove the truth of the matter asserted. Fed. R. Evid. 801(c). Contrary to Defendants' arguments, only one of Mr. Mader's statements appears to implicate the statement of another person in any way. In paragraph 12 of his affidavit, Mr. Mader states that Plaintiff's agent, Jeffrey Dail, observed Plaintiff's programming being displayed at Defendants' commercial establishment. (Doc. 66 at 6.) While this paragraph is based on the statements of Mr. Dail, rendering it hearsay, the Court notes that Mr. Dail's own affidavit and statements on this incident are already part of the record in this case.[6] (Doc. 66 at 12-13.) As a result, the Court sees no reason to strike this statement. See <u>Ross v. Corp. of Mercer Univ.</u>, 506 F. Supp. 2d 1325, 1335 (M.D. Ga. 2007) (finding hearsay statements admissible because information contained elsewhere throughout record). None of the other statements in question include statements by

---

[6] As further confirmation that Defendants' efforts to strike the statement is a waste of time, the Court notes that Defendants do not even contest the fact that they exhibited Plaintiff's programming. (Doc. 63, Attach. 10 at ¶ 8.)

anyone other than Mr. Mader. Accordingly, there are no hearsay issues in this case.

Finally, both parties accuse the other of proceeding in bad faith. Defendants argue that Plaintiff submitted the affidavit in bad faith or solely for delay in violation of Fed. R. Civ. P. 56(h), entitling Defendants to reasonable expenses incurred as a result of responding to the affidavit. (Doc. 68 at 1.) In response, Plaintiff urges the Court to award it attorney's fees pursuant to 28 U.S.C. § 1927, arguing that Defendants' motion is frivolous and has caused "unreasonable and vexatious multiplication of the proceedings." (Doc. 70 at 6.) The Court finds both arguments without merit. While Defendants' Motion to Strike must be denied, the Court declines to award any party attorney's fees in connection with either the motion or the underlying affidavit.

## II. SUMMARY JUDGMENT STANDARD OF REVIEW

According to Federal Rule of Civil Procedure 56(a), "[a] party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought." Such a motion must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Id. The "purpose of

9

summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56 advisory committee notes).

Summary judgment is appropriate when the nonmovant "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The substantive law governing the action determines whether an element is essential. DeLong Equip. Co. v. Wash. Mills Abrasive Co., 887 F.2d 1499, 1505 (11th Cir. 1989).

As the Supreme Court explained:

> [A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.

Celotex, 477 U.S. at 323. The burden then shifts to the nonmovant to establish, by going beyond the pleadings, that there is a genuine issue as to facts that are material to the nonmovant's case. Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991).

The Court must review the evidence and all reasonable factual inferences arising from it in the light most favorable to the nonmovant. Matsushita, 475 U.S. at 587-88. However, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Id. at 586. A mere "scintilla" of evidence, or simply conclusory allegations, will not suffice. See, e.g., Tidwell v. Carter Prods., 135 F.3d 1422, 1425 (11th Cir. 1998). Nevertheless, where a reasonable fact finder may "draw more than one inference from the facts, and that inference creates a genuine issue of material fact, then the Court should refuse to grant summary judgment." Barfield v. Brierton, 883 F.2d 923, 933 (11th Cir. 1989).

III. PRECLUSIVE DEFENSES

Defendants make two arguments unrelated to the merits of Plaintiff's Motion for Summary Judgment that they nevertheless believe should be dispositive here. First, Defendants argue that because Circuit City installed the equipment at Defendants' commercial location over ten years ago, Plaintiff should have known of the location of the equipment long before this suit was brought. (Doc. 71 at 18.) Because this case was not brought within two years[7]

---

[7] There is some argument to be made that Georgia's mirror to the FCA is substantially similar to the federal law and

from the date of that installation, Defendants argue that Plaintiff's claims should be barred by the statute of limitations. Id.

The Court disagrees. The statute of limitations for an FCA claim begins to accrue upon the date a plaintiff discovered or should have discovered the violation for which it brings suit. See In re Cases Filed by DirectTv, Inc., 344 F. Supp. 2d 647, 662 (D. Ariz. 2004). The discrete violation upon which Plaintiff bases its suit occurred on September 27, 2012. (Doc. 63, Attach. 10 at ¶¶ 2, 8.) This suit was filed on April 30, 2013. (Doc. 1.) Accordingly, Plaintiff brought its claims well within the statute of limitations and its summary judgment arguments remain viable.

Citing the same reasoning, Defendants also contend that any prospective equitable relief the Court might award is barred by the doctrine of laches. (Doc. 71 at 19.) As Plaintiff appears to seek only damages, having already discontinued service to Defendants, the issue appears moot. In any case, to the extent that equitable relief might somehow be appropriate in this case, the Court finds that

---

thus four-year statute of limitations should apply in this case. See, e.g., DirecTV, Inc. v. Wright, 350 F. Supp. 2d 1048, 1055 (N.D. Ga. 2004). However, because the Court finds that Plaintiff's claims would not be barred under either standard, the issue is moot.

such claims would not be precluded for the same reasons as stated above. Plaintiff bases its suit on a single violation occurring less than one year before this case was filed, and thus no unreasonable delay or prejudice to Defendants has occurred.

IV. <u>PLAINTIFF'S FCA CLAIM</u>

As stated earlier, Plaintiff only moves for summary judgment with regard to its FCA claim.[8] Specifically, Plaintiff alleges that Defendants violated 47 U.S.C. § 605 which states that

> [n]o person not being authorized by the sender shall intercept any radio communication and divulge or publish the existence, contents, substance, purport, effect, or meaning of such intercepted communication to any person. No person not being entitled thereto shall receive or assist in receiving any interstate or foreign communication by radio and use such communication (or any information therein contained) for his own benefit or for the benefit of another not entitled thereto. No person having received any intercepted radio communication or having become acquainted with the contents, substance, purport, effect, or meaning of such communication (or any part thereof) knowing that such communication was intercepted, shall divulge or publish the existence, contents, substance, purport, effect, or meaning of such communication (or any part

---

[8] The Court stated its doubts regarding Plaintiff's ECPA claim in its order denying Defendants' earlier Motion for Summary Judgment. (Doc. 77 at 8 n. 4.) Specifically, the Court noted that an ECPA claim under 18 U.S.C. § 2511 carries an intent requirement unlike violations of 47 U.S.C. § 605(a). However, Plaintiff has not moved for summary judgment regarding its ECPA claim, and thus the Court will not revisit this issue here.

> thereof) or use such communication (or any information therein contained) for his own benefit or for the benefit of another not entitled thereto.

The Eleventh Circuit has held that a defendant violates § 605(a) when he or she pays only the residential fee for satellite programming yet displays it in a commercial establishment. <u>J & J Sports Prods., Inc. v. Taqueria Jalisco, Inc.</u>, 491 Fed. App'x 962, 962 (11th Cir. 2012). Such is the case regardless of a defendant's misunderstanding or good faith. <u>Kingvision Pay Per View, Ltd. V. Williams</u>, 1 F. Supp. 2d 1481, 1484 (S.D. Ga. 1998).

Despite Defendants' contentions to the contrary, the issue in this case is actually quite simple. All parties agree that Plaintiff's programming was displayed within Defendants' commercial establishment. (Doc. 63, Attach. 1 at 14-15.) Because Defendants admit to displaying the programming, the only question before the Court is whether they were authorized to do so. While Defendants maintain they held a valid commercial account for the programming, Plaintiff states than no such commercial account exists and the programming was being delivered pursuant to a residential account registered to Defendant Shirah.

Defendants' primary argument on this score is that Plaintiff has not produced sufficient evidence to establish

14

that the account was in fact residential, insisting that Plaintiff's documentation and the affidavits of Mr. Dail and Mr. Mader cannot support summary judgment in Plaintiff's favor.[9] (Doc. 71 at 11-13.) Defendants admit that Plaintiff's internal records, as well as its billing ledger, indicate the account was residential. (Doc. 71 at 11.) In addition, it appears that Defendants were being charged on the date in question—as well as for the ten years prior—the residential rate for programming. (Doc. 66 at 49-59.) In fact, every document addressing the issue in the evidentiary record indicates that the account was for residential purposes only.[10] While Defendants dismiss these notations as mistakes (Doc. 71 at 5), there is no evidence in the record to support this assertion. Accordingly, the Court finds this information more than enough to conclude

---

[9] Defendants also repeat the argument from their earlier motion for summary judgment that Plaintiff has not established Defendants ever signed a contract with Plaintiff. (Doc. 71 at 9-13.) As stated in this Court's previous order, however, it is long-settled Georgia law that the lack of a signature is not fatal to a contract's enforceability. See, e.g., Robinson v. Belcher, 37 Ga. App. 412, 412, 140 S.E. 412, 412 (1927) (signature may, but is not required, to prove existence of contract). Plaintiff has provided more than sufficient evidence to establish that a contract existed between the parties. Accordingly, the Court finds Defendants' argument on this matter without merit.

[10] In their response, Defendants repeat their argument that the evidence should be dismissed as hearsay. However, the Court has already concluded that the evidence is permissible. See supra Analysis I.

that the account in question was residential and that Plaintiff is liable under § 605(a). The burden thus shifts to Defendants to show an issue of an issue of material fact. Clark, 929 F.2d at 608.

In response to Plaintiff's evidence indicating the account was residential, Defendants rely solely on Defendant Shirah's testimony that he initially instructed his assistant to open a commercial account over ten years ago. (Doc. 71 at 3.) Even taking Defendant Shirah's testimony as true, the Court fails to see how this assertion creates a genuine issue of material fact. While Defendants may very well have intended the account to be commerical, Defendant Shirah's instructions to his assistant indicate at best a good faith belief that this was the case. However, a lack of willfulness or knowledge by a defendant is appropriately evaluated only in the context of damages, and is irrelevant for purposes of determining liability. Joe Hand Promotions, Inc. v. Kebede, 2011 WL 294503, at *3 (N.D. Ga. Jan. 26, 2011) (unpublished); see also 47 U.S.C. § 605(e)(3)(C)(iii) ("In any case where the court finds that the violator was not aware and had no reason to believe that his acts constituted a violation of this section, the court in its

discretion may reduce the award of damages to a sum of not less than $250.").

Regardless of their initial intent, Defendants have offered no compelling argument that there is a genuine issue of material fact regarding the nature of their account. Defendants' repeated assertion that they opened a commercial account is nothing more than wishful conjecture. The proposition that the account was truly commercial, but that Plaintiff repeatedly mischaracterized its residential nature in all of its documents and improperly billed Defendants for over ten years simply defies belief. It is certainly plausible that Defendants had a good faith belief the account was commercial, but that alone does not create a genuine issue of material fact. While the Court may certainly consider the reasonableness of Defendants' belief when determining damages, it has no relevance in establishing liability. Accordingly, summary judgment on Plaintiff's FCA claim is proper.

## CONCLUSION

For the reasons stated above, Defendants' Motion to Strike is **DENIED**. Plaintiff's Motion for Summary Judgment is **GRANTED**. The parties shall have **thirty days** from the date of this order to file briefs regarding the appropriate

damages, costs and attorney's fees in this case.[11] Because Plaintiff's ECPA claim was not addressed by Plaintiff's Motion for Summary Judgment, this case will proceed to trial on that claim.

SO ORDERED this 24th day of March 2015.

_____
WILLIAM T. MOORE, JR.
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA

---

[11] As stated earlier, the Court may take Defendants' intent into consideration when determining damages. In its motion, Plaintiff makes a series of conclusory statements that Defendant committed the offense "willfully and knowingly" and that the act "was intentional and done for commercial gain, and required scheming and overt acts, justifying the imposition of the maximum statutory damages under the [FCA]." Doc. 63, Attach. 1 at 15-16.) However, Plaintiff has yet to establish that Defendant acted willfully or in bad faith. In any case, the Court will allow the parties to brief their positions regarding the appropriate damages and need not address this matter at the present time.